UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Boehringer Ingelheim Animal Health USA
Inc.,

        Plaintiff,

    v.

Intervet Inc. d/b/a Merck Animal Health,

        Defendant.

Civ. Action No.

**JURY TRIAL
DEMANDED**

## COMPLAINT

Plaintiff Boehringer Ingelheim Animal Health USA Inc. ("Boehringer") brings this Complaint requesting preliminary and permanent injunctive relief, corrective advertising, monetary damages, and other relief against Defendant Intervet Inc. d/b/a Merck Animal Health ("Merck"). In support, Boehringer respectfully alleges as follows:

## NATURE OF ACTION

1.     This case centers around Merck's use of false advertising to gain a foothold for its new feline leukemia vaccine. Merck is competing unfairly by falsely telling buyers that tests prove its product is twice as effective as Boehringer's long-established, market-leading vaccine. No test supports such a claim, which is meant

only to divert customers on false pretenses.  Through this action, Boehringer seeks to stop Merck's false advertising, and re-level the playing field so the companies may fairly compete on the proven merits of their products.

2.      Boehringer's feline leukemia vaccine product has been on the market for nearly two decades, and is the established market leader.  Merck only recently offered a competing nonadjuvanted vaccine.  Merck sought a short cut to build up its customer base, and through it gain a foothold for follow-on product sales.  Rather than build up its customer base through hard work, Merck sought to have its new feline vaccine product immediately undercut Boehringer's established market position.  So, Merck falsely advertised to veterinarians and the public that its vaccine is twice as effective as Boehringer's.  In reality, none of the studies on which Merck relies support its claims.  What Merck's own scientists actually conclude is that there was no "statistically significant difference . . . between the vaccine groups."

3.      Boehringer, formerly known as Merial, is a world-leading innovator of animal healthcare products.  Among Boehringer's renowned contributions to the veterinary field is the PUREVAX family of feline vaccines—the only complete range of fully adjuvant-free feline vaccines.  Adjuvants are chemical or biological substances that are added to certain types of vaccines to trigger an immune response.  Adjuvants in feline vaccines can lead to chronic inflammation and sarcoma development. Most cats who develop vaccine-associated sarcomas are euthanized

due to poor prognosis or the low quality of life associated with the radical surgery required to remove these aggressive tumors. Boehringer invested years and significant capital to develop its market-leading PUREVAX line.

4.      Within the PUREVAX line, PUREVAX Recombinant FeLV (rFeLV) ("PUREVAX FeLV") is the first nonadjuvanted vaccine for Feline Leukemia Virus ("FeLV"). PUREVAX FeLV has been on the market since the early 2000s and has led the market for more than a decade. Many veterinarians choose PUREVAX FeLV's adjuvant-free protection over adjuvanted alternatives, and Boehringer's PUREVAX FeLV earned 48% of the market for FeLV vaccines in 2024.

5.      In September 2024, Merck launched Nobivac NXT FeLV ("Nobivac NXT FeLV"), a nonadjuvanted vaccine for FeLV. Nobivac NXT FeLV is a directly competitive product with PUREVAX FeLV.

6.      Beginning in or around September 2024, Merck embarked on a marketing campaign directed against PUREVAX FeLV built on false and misleading advertisements. Among other materials and presentations, Merck distributed written advertisements claiming that a study proves Nobivac NXT FeLV provides 100% protection against FeLV as compared to PUREVAX FeLV offering only 51% protection. These claims are false. And they are material: whether a vaccine actually works is the core characteristic of the product.

7.      For ten months, Merck refused to disclose to Boehringer or make public

the self-funded and self-administered study purportedly supporting their comparative claims, hiding the results despite multiple requests for substantiation. Merck's very recent publication of the study report confirms the study in no way supports their marketing claims. Merck's sales representatives promoted its false claims to veterinarians, and have used the study's purported findings to suggest that Merck's other vaccine products were superior to Boehringer's.

8.     Customers have a right to expect truthful advertising. Competitors have a right to expect fair competition. But Merck's advertising campaign is geared toward the immediate gratification of gaining sales and market share based on false claims, and it has already caused Boehringer significant harm. Without intervention, Merck's false advertising threatens to irreparably harm Boehringer, and unlawfully divert millions of dollars in sales, all while misleading veterinarians and pet owners about the comparative performances of the products. Boehringer therefore seeks to stop Merck's false advertisements and to take steps to address the harm that Boehringer already has suffered.

9.     Boehringer brings this action for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370, *et seq*.; and for unfair competition under O.C.G.A. § 23-2-50, *et seq*., California Business and Professions Code § 17200, *et seq*., and the common law. Boehringer seeks preliminary and permanent injunctive

relief, corrective advertising, and damages to redress Merck's false advertising.

## PARTIES

10.    Boehringer is a Delaware corporation with its principal place of business at 3239 Satellite Blvd., Duluth, Georgia 30096.

11.    Merck is a corporation organized under the laws of New Jersey and headquartered in Rahway, New Jersey.  Merck directed and/or controlled one or more of the false advertisements at issue in this case and is responsible for those advertisements.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121(a), 28 U.S.C. § 1331, § 1338(a), § 1338(b), and § 1367.

13.    This Court has personal jurisdiction over Merck and venue is proper within this judicial district pursuant to 28 U.S.C. § 1391.  Merck regularly sells Nobivac NXT FeLV and other products in this judicial district.  Merck has placed some or all of the false and misleading advertisements that are the subject of this action into interstate commerce and sent them into this judicial district.  Boehringer, whose property rights have been damaged by Merck's actions, is located in this judicial district.

## BACKGROUND

I.  **BOEHRINGER DEVELOPS THE FIRST NONADJUVANTED FeLV VACCINE AND BECOMES THE MARKET LEADER.**

14.    Boehringer makes four feline vaccines under the PUREVAX label: (1) PUREVAX FeLV; (2) a vaccine for feline rhinotracheitis, calicivirus, and panleukopenia viruses ("PUREVAX RCP"); (3) a vaccine for RCP and chlamydia felis ("PUREVAX RCCP"); and (4) a vaccine for feline rabies virus ("PUREVAX rabies").    Boehringer sells these vaccines independently and in various combinations.    For example, customers can purchase a standalone RCP or rabies vaccine, or a combination vaccine that protects against both RCP and rabies.

15.    Boehringer's PUREVAX FeLV was the first recombinant canarypox-vectored nonadjuvanted FeLV vaccine.    Because at the time it was the only nonadjuvanted FeLV vaccine, it quickly became a market leader.    Veterinarians and pet owners recognized the safety benefits PUREVAX FeLV offered over adjuvanted vaccines.    For example, the World Small Animal Veterinary Association recommends administration of nonadjuvanted vaccines to cats whenever possible.

16.    Since it was first introduced in 2005, PUREVAX FeLV has been enormously successful, accounting for tens of millions of dollars in annual sales.    It is the market leader among FeLV vaccines: In 2024, Boehringer accounted for 48% of all FeLV vaccine sales; Merck, the next closest competitor, accounted for 21%

with its adjuvanted FeLV vaccine.

17.    Because of its commitment to supporting the use of nonadjuvanted vaccines in feline patients throughout their lives, Boehringer provides high quality support and education for veterinarians and their staff.  Boehringer also stands by its vaccines with satisfaction guarantees, which offer diagnostic and treatment costs for eligible feline patients that have been vaccinated with a PUREVAX nonadjuvanted feline vaccine.

18.    Many veterinarians who choose PUREVAX FeLV also choose to use other vaccines in the PUREVAX line.  The lost sales of PUREVAX FeLV resulting from Merck's unlawful actions have led to a decrease in sales of other products, including other PUREVAX vaccines.

## II.    MERCK DEVELOPS A COMPETING PRODUCT AND LAUNCHES A FALSE ADVERTISING CAMPAIGN.

19.    Merck is a global animal health company and Boehringer's competitor. Merck offered a nonadjuvanted injection FeLV vaccine for cats known as Nobivac NXT FeLV for the first time in or around September 2024.

20.    Merck advertises Nobivac NXT FeLV through a variety of mediums, including through its written promotional materials and in-person visits to veterinarian clinics, hospitals, and trade shows.  Merck also advertises Nobivac NXT FeLV online on various websites.

21.    Merck also markets other vaccines within the Nobivac family that

directly compete with the PUREVAX family of vaccines through the same channels. Merck markets these vaccines individually and in combination, including advertising an adjuvanted combination RCP-FeLV vaccine.

22.    In or around September 2024, Merck began distributing print advertisements that compare Nobivac NXT FeLV with PUREVAX FeLV.   The centerpiece of Merck's advertisements is a banner that claims in large font that Nobivac NXT FeLV "Outperforms PUREVAX FeLV" and a colorful bar graph that states Nobivac NXT FeLV provides "100%" protection and PUREVAX only "51%" protection.   The degree of protection provided by a vaccine can be determined by assessing what is known as the preventable fraction.   The preventable fraction calculation measures the proportion of disease incidence in a population that is reduced by vaccination.   In other words, the preventable fraction determines the percentage of cats that the vaccine protects from FeLV after exposure to the virus. Merck's advertisement also states that its claims are based on a "comparative study," and references data at the bottom of the advertisement.



Exhibit 1

23.    Merck distributes its advertisements online.  For example, as of the date of filing, a link to Merck's graph is currently published on the webpage for its Nobivac NXT FeLV vaccine.  Merck Animal Health, *Nobivac NXT FeLV*, MERCK ANIMAL HEALTH USA, https://www.merck-animal-health-usa.com/nobivac/nobivac-nxt-felv (last visited October 10, 2025).

24.    In September 2024, Merck presented its false claims at a national conference of veterinarians and industry leaders hosted by the American Association of Feline Practitioners ("AAFP") in Portland, Oregon.  An abstract of this study was published in the International Society of Companion Animal Infectious Diseases proceedings from that conference.  In its presentation, Merck claimed that Nobivac NXT FeLV's efficacy "outperforms PUREVAX FeLV" and presented its chart

comparing the two vaccines. Since then, Merck has repeated its claims at conferences and trade shows nationwide, including the Veterinary Meeting & Expo ("VMX"), the Western Veterinary Conference, and the American Veterinary Medical Association conference. There, Merck presented its false statements during presentations, posted them on signage around the events, and distributed flyers with them throughout the conference. As recently as September 2025, Merck presented its advertising claims at "CE by the Sea Continuing Education 2025"—a major veterinary conference hosted in Corpus Christi, Texas.

25.    Merck has distributed print and electronic advertisements with the false and/or misleading claims nationwide to both veterinarians and pet owners, including, on information and belief, in Georgia and California.

26.    These actions are neither isolated nor accidental. Instead, they are part of Merck's coordinated, nationwide campaign that includes print advertisements, point-of-purchase materials, and sales tactics. Such statements—along with other similarly false and/or misleading claims—have been made in a variety of settings and through various channels.

27.    Additionally, on information and belief, Merck's sales representatives have used aggressive and misleading tactics to pressure veterinary offices to purchase Nobivac NXT FeLV instead of PUREVAX FeLV. Parroting Merck's false advertisements, sales representatives have provided misinformation about

PUREVAX FeLV's efficacy directly to veterinarians and falsely or misleadingly claimed that veterinarians' licenses could be at risk if they continue to prescribe PUREVAX FeLV instead of Nobivac NXT FeLV.

28.    Merck's challenged advertisements, point-of-purchase materials, and sales tactics are false and/or misleading and deceive or tend to deceive consumers.

29.    Merck's challenged advertisements, point-of-purchase materials, and sales tactics concern an inherent quality or characteristic of Boehringer's PUREVAX FeLV product and have had, and will likely continue to have, a material effect on veterinarians' purchasing decisions.

## III.    DESPITE MULTIPLE REQUESTS, MERCK CONCEALS ITS SUPPOSEDLY SUBSTANTIATING DATA FOR MONTHS.

30.    Merck did not publish any of the underlying data that supported its advertising claims when it began its advertising campaign.  Consumers who encountered its advertisements had no way to verify its claims.  Nor did its competitors.

31.    Boehringer first learned of the false advertisements in or around September 2024.  It promptly contacted Merck to ask for the data substantiating the comparative claims being made.  Merck refused to provide the data.

32.    On November 14, 2024, Boehringer sent a letter to Merck that asked for a second time to review the underlying data.  In the letter, Boehringer offered to "sign a confidentiality agreement or accept a version [of the data] that redacts any

proprietary information."

33.    Merck did not respond until December 12, 2024.  When it did, Merck doubled down on its claims, writing that "the Carritt et al. study referenced in the Nobivac advertisement is methodologically sound and provides statistically significant results."  Merck also assured Boehringer that "Merck Animal Health is already transitioning from the [advertising] copy appended to your letter to new promotional material for Nobivac, which, among other things, incorporates additional support regarding the relative performance of the vaccines." Nevertheless, Merck once again refused to release the "Carritt et al. study" or substantiating data.

34.    On January 7, 2025, anticipating that Merck's unsubstantiated claims would continue to go unchecked, Boehringer provided its sales representatives with a responsive letter to veterinarians, alerting them that Merck's cited study had not been published and that Merck had refused to share the details of the study with Boehringer.  Boehringer also pointed out that a published study from 2017 found "the PUREVAX FeLV vaccine to have efficacy equivalent to killed adjuvanted FeLV vaccines."  Boehringer's letter is no longer in circulation.[1]

---

[1] On September 26, 2025, Boehringer received a letter from Merck regarding Boehringer's responsive letter. Merck raised three concerns: (1) that Merck's studies had been published; (2) that Merck provided substantive details to Boehringer; and (3) that a 2017 study cited by Boehringer is irrelevant to Nobivac NXT FeLV's efficacy. None of Merck's concerns are well founded.  Boehringer's responsive letter was drafted in early January 2025—six months before Merck's paper was published in late June 2025, and a month before Merck provided any details about its studies (which, in all events, were not substantive).  And Boehringer's letter makes no claim that the 2017 study says anything about Nobivac NXT FeLV—it couldn't, Nobivac NXT FeLV was not released until seven years later.  Instead,

35.     By January 22, 2025, Merck still had not provided any support for its advertisements' claims.  In light of several major industry conferences approaching, Boehringer, for a third time, contacted Merck and asked to see the underlying data.

36.     Once again, Merck waited several weeks to respond.  On February 3, 2025, it again refused to provide substantiating data.

37.     Merck kept the underlying data secret from September 2024, when it first began making its false claims, all the way until June 27, 2025, when Merck finally published a paper that detailed its studies purportedly supporting its advertising claims.  Merck did not inform Boehringer that it had made its studies public—despite Boehringer's repeated requests for information—and Boehringer did not learn that the paper was available until several weeks later.

38.     The paper reports the results of three studies: (1) a dose-ranging study; (2) a comparison study; and (3) a field safety study.  None support Merck's advertisements.

39.     Boehringer brought the instant lawsuit to stop Merck's continued false advertising campaign and the harm it is causing.

## IV.      MERCK'S PAPER SHOWS ITS CLAIMS ARE FALSE.

40.     The examples below exemplify without limitation the type of false and/or misleading claims that Merck has made, and continues to make.

---

Boehringer points to the 2017 study as further evidence of PUREVAX FeLV's efficacy.

### A. Merck's False Statements Comparing Nobivac NXT FeLV's and PUREVAX FeLV's Claimed Protection (Preventable Fractions)

41.    Merck's advertisements claim that Nobivac NXT FeLV "[o]utperforms PUREVAX® FeLV" because "[a] comparative study demonstrated that Nobivac® NXT FeLV provided a preventable fraction of 100% compared with only 51% for PUREVAX® FeLV."  It illustrates its claimed comparison in a bar chart, which purports to show the vaccines' preventable fractions side-by-side:



Exhibit 1 (highlighting added)

42.    Merck's advertisement repeats its comparative claim that Nobivac NXT FeLV "outperforms" PUREVAX FeLV because it has better "efficacy" several times:



Exhibit 1 (highlighting added)



Exhibit 1 (highlighting added)

43.    These claims are literally false and/or misleading because neither Merck's dose-ranging study nor Merck's comparison study supports them. Merck's field safety study says nothing about preventable fractions and is not relevant to its advertising claims.

15

44.    The statements of Merck's own scientists show that its studies do not support its advertising claims.  The authors of Merck's paper concluded that a "statistically significant difference" was not demonstrated "between the vaccine groups" in either the dose-ranging or comparison study:



"**A statistically significant difference** was demonstrated between each vaccine group and the control group for both the dose-ranging and comparison studies, **yet not between the vaccine groups.**"

Exhibit 2 (highlighting added)

45.    Nor did Merck's studies test a sufficient number of cats to support its claims about either vaccine's preventable fraction, whether in comparison or not.  In its dose-ranging study, each of Merck's Nobivac NXT FeLV vaccine groups consisted of eight cats.  Its PUREVAX FeLV group consisted of only seven.  In its comparative study, Merck tested only ten cats in each group.  These low sample sizes fail to support conclusions about preventable fractions and comparative efficacy in the general population.  Merck's claim that the studies "demonstrated"

preventable fractions or comparative efficacy in the general population is therefore literally false and/or misleading.

46.    Far from supporting Merck's comparisons, its scientists admit that "[a]n increased number of study animals would be required to detect a statistically significant difference between the [Nobivac NXT FeLV] and [PUREVAX FeLV] vaccine groups."



Exhibit 2 (highlighting added)

47.    Because its study did not demonstrate a statistically significant difference between the vaccines, Merck's comparative claims are false and/or misleading.

48.    Any claims about preventable fractions are also false and/or misleading because the results of each group of cats studied showed wide confidence intervals,

which further preclude any conclusion about the vaccines' efficacies.  In the context of preventable fractions, a confidence interval reflects a range of values that are likely to contain the true preventable fraction.  For example, if a 95% confidence interval has a 20% lower limit ("LL") and a 40% upper limit ("UL"), that indicates 95% confidence that the "true" value is somewhere between 20% and 40%.  Wide confidence interval ranges, such as those contained in Merck's studies, indicate a lack of precision in the data and that the true preventable fractions could be well above or well below the numbers identified in Merck's studies.

**B. Merck's False Reference to a "Comparative" Study for its PUREVAX FeLV Claims**

49.    Merck's advertisement claims that a "comparative study demonstrated" a preventable fraction of "only 51% for PUREVAX FeLV."  It then repeats that claim in its chart:



Exhibit 1 (highlighting added)

50.    These claims are false and/or misleading.

51.    Merck's claim that the source of the preventable fraction it reports for PUREVAX FeLV is a "comparative study" is false.  Merck's "comparison study" found a preventable fraction of 70% for PUREVAX FeLV, not 51%:

**Table 3.** Comparison study results: antigenemia and preventable fraction. LL is lower limit; UL is upper limit.

| Treatment Group | Vaccine | Cats Antigenemic | Preventable Fraction 95% Confidence Interval [LL, UL] |
|---|---|---|---|
| A | RP-FeLV | 0/10 | 100% [69%, 100%] |
| B | Canarypox-vectored FeLV | 3/10 | 70% [35%, 93%] |
| C | Placebo | 10/10 | - |

Exhibit 2 (highlighting added)

52.    To be sure, a different Merck study—Merck's dose-ranging study— found a preventable fraction of 51%.  But a dose-ranging study is not a comparative study, nor does Merck's advertisement claim to rely on a dose-ranging study.  To the contrary, a dose-ranging study is used to identify the minimum effective dosage for medication for follow-up testing on efficacy.  The results of a dose-ranging study therefore cannot reliably establish the preventable fractions of either vaccine, let alone in comparison with each other.

### C. Merck's False Statements About Nobivac NXT FeLV's Efficacy

53.    Merck's advertisement also claims that a "comparative study demonstrated" that "Nobivac NXT FeLV provided a preventable fraction of 100%"

and that "100% of cats vaccinated with Nobivac NXT FeLV were protected against

persistent viremia."

 

Exhibit 1 (highlighting added)

54.    These claims are false and/or misleading.

55.    As with its PUREVAX FeLV claims, Merck relies on its dose-ranging

study for its Nobivac NXT FeLV claims, while falsely and misleadingly claiming to

base its claims on a "comparative study."   The text below Merck's preventable

fraction claim explains that "0 of 8 kittens in the Nobivac® NXT FeLV group"

became persistently antigenemic.  This necessarily refers to the dose-ranging study,

since that is the only Merck study with groups of eight cats; the comparative study

used groups of ten.

56.    Merck's dose-ranging study does not support the claim of a "preventable

fraction of 100%" for Nobivac NXT FeLV.  Because of the study's methodology,

no conclusion can be drawn about the preventable fraction for Nobivac NXT FeLV.

57.     Here's why.  To determine a vaccine's preventable fraction, a study must test for two markers: antigen p27 and proviral DNA.  Antigen p27 is produced by the body as part of an immune response to FeLV.  Proviral DNA is the presence of FeLV in a cat's cells.  Cats who test positive for antigen p27 generally do have FeLV, so an antigen-only test can identify instances when a vaccine did not work. But the inverse is not true: not all cats who test negative for antigen p27 do not have FeLV.  A cat who receives a vaccine and then tests negative for antigen p27 might nevertheless be infected with FeLV.  In other words, a vaccine succeeds in protecting against FeLV only if a cat tests negative for both antigen p27 and proviral DNA.

58.     Merck's dose-ranging study only tested for antigen p27, not proviral DNA.  So it cannot show that the vaccine successfully protected against FeLV. Accordingly, Merck's antigen-only testing cannot establish Nobivac NXT FeLV's overall preventable fraction.  For this reason, the claim that Nobivac NXT FeLV protects "100%" of cats, putting aside the other flaws with Merck's dose-ranging study, is false and/or misleading.

59.     Moreover, Merck's dose-ranging study ran experiments on three groups of cats using Nobivac NXT FeLV.  One of the cats tested positive for antigen p27. Thus, even by the terms of its own limited methodology, Merck's dose-ranging study does not support the claim that "100%" of cats were protected against FeLV.

**Table 2.** Dose-ranging study results. Antigenemia is defined as three consecutive positive FeLV p27 results or five total positive results, consecutive or not, during the post-challenge monitoring phase. Preventable fraction is calculated as (percent of persistent antigenemia in controls—percent of persistent antigenemia in vaccinates)/percent of persistent antigenemia in controls × 100%. LL is lower limit; UL is upper limit.

| Treatment Group | Vaccine | Cats Antigenemic | Preventable Fraction 95% Confidence Interval [LL, UL] |
|---|---|---|---|
| 1 | RP-FeLV $2.5 \times 10^8$ RP/dose | 0/8 | 100% [60%, 100%] |
| 2 | RP-FeLV $3.6 \times 10^7$ RP/dose | 0/8 | 100% [60%, 100%] |
| 3 | RP-FeLV $1.5 \times 10^8$ RP/dose | 1/8 | 86% [33%, 99%] |
| 4 | Canarypox-vectored FeLV | 3/7 | 51% [−11%, 92%] |
| 5 | Placebo | 7/8 | - |

Exhibit 2 (highlighting added)

60.    Even if Merck had relied on its comparison study for its Nobivac NXT FeLV claims while necessarily relying on its dose-ranging study for its PUREVAX FeLV claims, it would not change the conclusion that Merck's advertisement is false and/or misleading.

61.    Results from Merck's dose-ranging study cannot be cherry picked and then combined with results from Merck's comparative study to support any sort of conclusion about the two vaccines.  The two different studies involved different methodologies and set about answering different research questions.  For this reason, in the context of licensing studies that are submitted to the USDA for product approval, the USDA warns against the comparison of "one product to another" because "[s]light differences in study design and execution can render the comparisons meaningless."  Here, Merck's studies were even less rigorous than any

studies it submitted to the USDA, making its cross-study comparisons all the more invalid.

62.    Moreover, Merck's advertisement states that "[a] comparative study"—singular—demonstrates the claimed preventable fractions for Nobivac NXT FeLV and PUREVAX FeLV.  It does not state that its claim is based on one experiment within a comparative study together with one experiment within a dose-ranging study, which Merck claims collectively demonstrate the claimed preventable fractions.  And to even state that makes clear that such a mix-and-match approach, cherry picking favorable data, is not scientifically valid.

63.    Merck also claims that Nobivac NXT FeLV has "a 2-year duration of immunity (DOI)," a "[p]roven 2-yr DOI," and offers "[l]asting protection with fewer injections."

 

Exhibit 1 (highlighting added)

| | Nobivac® NXT FeLV | PUREVAX® FeLV |
|---|:---:|:---:|
| Proven 2-yr DOI | ✔ | |
| Labeled effective against persistent viremia | ✔ | |
| Adjuvant-free formulation | ✔ | ✔ |
| Preservative-free formulation | ✔ | |
| Antibiotic-free formulation | ✔ | |
| Low-volume (0.5-mL) dose | ✔ | ✔ |

Exhibit 1 (highlighting added)

64.    Merck's DOI claims are false and/or misleading.  Neither of its cited studies supports its claims.  Nor do Merck's advertisements identify any other basis for its claims.  Merck's advertisements also convey the false message that Nobivac NXT FeLV has demonstrated 100% efficacy after two years—no study supports that claim.

65.    Merck's DOI claims are further false and/or misleading because Boehringer takes steps to ensure that cats who receive PUREVAX FeLV are protected for two or more years.  Merck's claims wrongly convey that only Nobivac NXT FeLV can support cats for two or more years.  These claims are therefore false and/or misleading.

## V.    MERCK'S FALSE CLAIMS HARM BOEHRINGER.

66.    The harm to Boehringer from Merck's false and/or misleading claims is substantial and irreparable.

67.    Merck's false and misleading advertisements and its aggressive marketing campaign based on those advertisements have, among other things, harmed the goodwill, reputation, and market share associated with Boehringer and

PUREVAX FeLV.

68.    Because of Merck's false and misleading advertisements and its aggressive marketing campaign based on those advertisements, Boehringer has lost and is at risk of losing a substantial portion of its sales of PUREVAX FeLV.

69.    Because of Merck's false and misleading advertisements and its aggressive marketing campaign based on those advertisements, Boehringer has lost and is at risk of continuing to lose customers.

70.    PUREVAX products and Nobivac products are sold by veterinarians. Veterinarian market leaders that shape other veterinarians' purchasing decisions and that have long used and recommended PUREVAX FeLV have switched, or are considering switching to Nobivac NXT FeLV, based on Merck's false and misleading advertisements.

71.    Once veterinarians begin recommending and stocking Nobivac NXT FeLV over PUREVAX FeLV due to false advertisements, it will be very difficult for Boehringer to regain those customers and that brand loyalty.  Moreover, because the PUREVAX and Nobivac product lines include a range of feline vaccines, many veterinarians who switch from PUREVAX FeLV to Nobivac NXT FeLV will also switch from other PUREVAX to other Nobivac vaccines, compounding the harm to Boehringer.

72.    Veterinarians consider the efficacy of FeLV vaccines to be significant,

material properties.  Merck's false statements have had and will continue to have a material effect on veterinarians' purchasing decisions and cause them to choose Merck's products over Boehringer's products.

73.    What's more, Merck's false advertisements create the false impression that Merck's other products are superior to Boehringer's.  This false impression has had and will continue to have a material effect on veterinarians' purchasing decisions and cause them to choose Merck's other products over Boehringer's.

74.     Every day Merck continues its false advertising scheme, veterinarians choose Nobivac NXT FeLV over PUREVAX FeLV products based on false information.

75.    Merck's false statements also harm Boehringer's hard-earned reputation for high-quality, effective products.  Money damages alone will be inadequate to prevent further harm and to undo the harm already caused to Boehringer.

## COUNT I

## FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT

76.    Boehringer repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

77.    Merck's false, deceptive, and/or misleading advertising and promotion in interstate commerce violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78.     Merck's advertising claims are false and/or misleading.

79.     Merck's advertising claims deceived, or had the capacity to deceive, consumers.

80.     Merck's false, deceptive, and/or misleading advertising claims have a material effect on purchasing decisions.

81.     Merck's false, deceptive, and/or misleading advertising claims affect interstate commerce.  Merck has published its claims nationwide, both digitally and by distributing printed copies.  Merck and Boehringer both sell their FeLV vaccines nationwide.

82.     Merck's false, deceptive, and/or misleading advertising claims have caused and will continue to cause irreparable harm to Boehringer unless and until Merck's conduct is enjoined by the Court and Merck is ordered to perform corrective advertising.  Boehringer has no adequate remedy at law.

83.     As a direct and proximate result of Merck's false, deceptive, and/or misleading advertising, Boehringer has suffered damages in an amount to be determined by the trier of fact.

84.     Because Merck's actions have been willful, Boehringer is entitled to treble its actual damages or Merck's profits, whichever is greater; to an award of costs; and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## COUNT II

## VIOLATION OF THE GEORGIA DECEPTIVE TRADE PRACTICES ACT

85.    Boehringer repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

86.    Merck's false, deceptive, and misleading advertising and promotional activities violate the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

87.    Merck's advertising claims were made in the course of its business, vocation, and/or occupation.

88.    Merck's advertising claims are false and/or misleading.

89.    Merck's false and/or misleading advertising claims disparage Boehringer's goods, services, and/or business.

90.    Merck's false and/or misleading advertising claims represent that Merck's goods and/or services have characteristics, uses, benefits, and/or qualities that they do not have.

91.    Merck's false, deceptive, and/or misleading advertising has caused and will continue to cause irreparable harm to Boehringer.

92.    As a direct and proximate result of Merck's false, deceptive, and/or misleading advertising, Boehringer has suffered damages in an amount to be determined by the trier of fact.

## COUNT III

## VIOLATION OF THE GEORGIA UNFAIR COMPETITION STATUTE

93.    Boehringer repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

94.    Merck's false, deceptive, and misleading advertising and promotional activities violate the Georgia Unfair Competition Statute, O.C.G.A. § 23-2-50, *et seq*.

95.    Merck's advertising claims and promotional activities, including the actions of its salespeople, are false and/or misleading.

96.    Merck's false and/or misleading advertising claims and promotional activities deceived, or had the capacity to deceive, consumers.

97.    Merck's false and/or misleading advertising claims and promotional activities misrepresent material facts about Merck's and Boehringer's vaccines.

98.    Merck made its false and/or misleading advertising claims, and engaged in its promotional activities, willfully to deceive and/or recklessly.

99.    Merck's false and/or misleading advertising claims and promotional activities were acted on by, among others, Boehringer's customers.

100.    Merck's false, deceptive, and/or misleading advertising and promotional activities has caused and will continue to cause irreparable harm to Boehringer.

101.    As a direct and proximate result of Merck's unfair competition,

Boehringer has suffered damages in an amount to be determined by the trier of fact.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

102.   Boehringer repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

103.   Merck's false, deceptive, and/or misleading advertising and promotional activities violates the Georgia common law of unfair competition.

104.   Merck's advertising claims and promotional activities are false and/or misleading.

105.   Merck's advertising claims and promotional activities deceived, or had the capacity to deceive, consumers.

106.   Merck's false, deceptive, and/or misleading advertising claims and promotional activities have a material effect on purchasing decisions.

107.   Merck's false, deceptive, and/or misleading advertising claims and promotional activities affect interstate commerce.  Merck has published its claims nationwide, both digitally and by distributing printed copies. Merck and Boehringer both sell their FeLV vaccines nationwide.

108.   Merck's false, deceptive, and/or misleading advertising claims and promotional activities have caused and will continue to cause irreparable harm to Boehringer unless and until Merck's conduct is enjoined by the Court.  Boehringer

has no adequate remedy at law.

109.   As a direct and proximate result of Merck's unfair competition, Boehringer has suffered damages in an amount to be determined by the trier of fact.

## COUNT V

## VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE

110.   Boehringer repeats and re-alleges the allegations set forth in the paragraphs above as if fully set forth herein.

111.   Merck's false, deceptive, and misleading advertising and promotional activities violate California Business and Professions Code § 17200, *et seq*.

112.   Merck's advertising claims are false and/or misleading,

113.   Merck's advertising claims deceived, or had the capacity to deceive, consumers.

114.   Merck knew, or by the exercise of reasonable care would have known, that its advertising claims are deceptive, false, and/or misleading.

115.   Merck's publication of its advertising claims and its promotional activities, including the actions of its salespeople, constitute an unfair, unlawful, and/or fraudulent business practice within the meaning of California Business and Professions Code § 17200, *et seq*.

116.   Merck's publication of its advertising claims further violates California Business and Professions Code because it constitutes false and/or misleading

advertising within the meaning of California Business and Professions Code § 17500, *et seq*.

117.  Merck's publication of its advertising claims further violates California's Unfair Competition Law because it constitutes false and/or misleading claims that purport to be based on factual, objective, and/or clinical evidence; compare Merck's product's effectiveness and/or safety to other brands or products; and purport to be based on fact within the meaning of California Business and Professions Code § 17508(a).

118.  Merck's actions demonstrate an intentional, willful, and bad-faith intent to deceive the public and surreptitiously gain market share.

119.  Merck's false, deceptive, and/or misleading advertising claims and its promotional activities using those claims have caused and will continue to cause irreparable harm to Boehringer unless and until Merck's conduct is enjoined by the Court.  Boehringer has no adequate remedy at law.

120.  As a direct and proximate result of Merck's false, deceptive, and/or misleading advertising and unfair business practices, Boehringer has suffered damages in an amount to be determined by the trier of fact.

## **JURY DEMAND**

Boehringer demands a trial by jury on all issues so triable as a matter of right and law.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the unlawful conduct of Merck alleged in this Complaint, plaintiff Boehringer respectfully prays that:

A. The Court enter judgment in favor of Boehringer and against Merck that Merck has engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), has engaged in deceptive trade practices in violation of the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq*., and has engaged in unfair competition under O.C.G.A. § 23-2-55, California Business and Professions Code § 17200, *et seq*., and Georgia common law;

B. The Court preliminarily and thereafter permanently enjoin Merck, and its officers, agents and servants, employees, attorneys, and all others in active concert of participation with it who receive actual notice, pursuant to Fed. R. Civ. P. 65 and 15 U.S.C. § 1116(a), from:

   1. using the advertising and promotional material attached as Exhibits [1-2] to the Complaint or materials substantially similar thereto;

   2. stating or implying in commercial advertising or promotion, including through its sales personnel, that Nobivac NXT

FeLV provides 100% protection as compared to PUREVAX FeLV offering only 51% protection that Nobivac NXT FeLV "outperforms" PUREVAX FeLV, or that Nobivac NXT FeLV has greater efficacy than PUREVAX FeLV;

3. stating or implying in commercial advertising or promotion, including through its sales personnel, that PUREVAX FeLV is ineffective; and

4. making statements materially similar to those in (1) - (3) *supra*;

C. The Court order Merck to disseminate, in a form to be approved by the Court, corrective advertising sufficient to reach all those who were the target of or received its false and misleading claims;

D. The Court order Merck, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Boehringer within thirty days after entry of the injunction a report in writing and under oath setting forth in detail the manner and form in which Merck has complied with the injunction;

E. The Court award Boehringer Merck's profits and/or Boehringer's damages from Merck's false and misleading advertising, deceptive trade practices, and unfair competition, in an amount to be

determined by the trier of fact and to be increased as provided by applicable law due to Merck's willful violation of the law;

F.  The Court declare that this is an "exceptional case" under 15 U.S.C. § 1117(a), and that Boehringer is therefore entitled to an award of its attorneys' fees and full costs;

G.  The Court award Boehringer its costs in connection with this action;

H.  The Court award Boehringer punitive damages for Merck's intentional, willful, and malicious conduct to the extent permitted by law; and

I.  The Court award Boehringer such other and further relief as the Court deems just and proper.

Dated: October 10, 2025                    Respectfully submitted,

/s/ Courtland L. Reichman
Courtland L. Reichman
(Georgia Bar No. 599894)
Sarah O. Jorgensen
(Georgia Bar No. 541130)
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1201 West Peachtree Street, Suite 2300
Atlanta, GA 30309
Telephone: (404) 609-1040
creichman@reichmanjorgensen.com
sjorgensen@reichmanjorgensen.com

*Attorneys for Boehringer Ingelheim Animal Health USA Inc.*